Anna S. Park (SB 314902)
CKR LAW LLP
1800 Century Park East, 14th Fl.
Los Angeles, CA 90067
Work: (424) 382-1800
Direct: (424) 382-1831
*apark@ckrlaw.com*

Attorneys for Plaintiff
Texmont Design Limited

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEXMONT DESIGN LIMITED,<br><br>    Plaintiff,<br><br>    v.<br><br>HALSTON OPERATING COMPANY, LLC, HOUSE OF HALSTON, LLC, THE H COMPANY IP, LLC, and XCEL BRANDS, INC.,<br><br>    Defendants. | Case No.: 2:18-cv-10164<br><br>**FIRST AMENDED COMPLAINT**<br><br>1) **Breach of Contract**<br>2) **Goods Sold and Delivered**<br>3) **Account Stated**<br>4) **Open Book Account**<br>5) **Unjust Enrichment**<br>6) **Promissory Estoppel**<br><br>**DEMAND FOR JURY TRIAL**<br>Complaint Filed: 12/6/2018<br>Trial Date: TBD |

COMES NOW Plaintiff Texmont Design Limited ("Texmont" or "Plaintiff") and, for its First Amended Complaint against Halston Operating Company, LLC ("HOC"), House of Halston, LLC ("House of Halston"), The H Company IP, LLC ("H Company," collectively referred to hereafter at times with House and HOC as the "Halston Companies") and Xcel Brands, Inc. ("Xcel," together with the Halston Companies collectively referred to at times as "Defendants") states as follows:

## NATURE OF THE ACTION

1.  Plaintiff brings this action for breach of contract, failure to pay for goods sold and delivered, account stated, open book account, unjust enrichment and promissory estoppel.  Plaintiff is damaged in the amount of at least $1,198,077.25, excluding any applicable interest, expenses, fees and costs.

## PARTIES

2.  Plaintiff Texmont is a company organized and existing under the laws of the Hong Kong Special Administrative Region of the People's Republic of China with its principal place of business located in Hong Kong.

3.  Defendant House of Halston is a Delaware registered limited liability company with its principal place of business at 1201 West 5th Street, Los Angeles, California.

4.  Defendant HOC is a Delaware registered limited liability company with its principal place of business at 1201 West 5th Street, Los Angeles, California.

5.  Defendant H Company is a Delaware registered limited liability company with its principal place of business at 1201 West 5th Street, Los Angeles, California.

6.  Defendant Xcel is a Delaware registered corporation with its principal place of business at 1333 Broadway, 10th floor, New York, New York.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §1332 where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a corporate citizen of a foreign country and citizens of the United States.

8. Venue is proper in this Central District of California pursuant to 28 U.S.C. §1391(b) because most of the Defendants reside within this judicial district and because a substantial part of the events giving rise to the claims asserted herein occurred within this judicial district.

## FACTUAL BACKGROUND

**Halston Companies and The Halston Goods**

9. Texmont manufactures and ships apparel to numerous clothing and accessories companies in the United States, including to Defendants.

10. Halston Defendants are part of the famous Roy Halston Frowick "Halston" branded fashion house that sells women's ready-to-wear apparels, accessories, handbags and shoes under the brand name "Halston" and "Halston Heritage[1]," among others.

11. At all relevant times, House of Halston was the holder of the "Halston" and "Halston Heritage" brand of goods. As a result, House of Halston benefited from Texmont's manufacture and delivery of these "Halston" and "Halston Heritage" branded goods.

12. At all relevant times, H Company was the registered owner of numerous Halston related intellectual property including, among others, the "Halston" and "Halston Heritage" trademarks. H Company benefited from Texmont's manufacture

---

[1] On February 13, 2019, Xcel Brands, Inc. acquired "Halston" and "Halston Heritage" trademarks: http://ir.xcelbrands.com/news-releases/news-release-details/xcel-brands-inc-acquires-halston-and-halston-heritage-trademarks

and delivery of the Halston and Halston Heritage branded goods.

13. From in or about early July 2018 though and including October 2018, Texmont worked directly with House of Halston to manufacture the "Halston" and "Halston Heritage" branded apparels according to House of Halston's specific instructions, direction, management and control.

14. House of Halston also directed the placement of each "Halston" and "Halston Heritage" labels to each item of goods that Texmont manufactured for House of Halston.

15. Although HOC issued the purchase orders for the Halston Goods (hereinafter defined), Texmont thought that the party with whom it contracted for the manufacture and delivery of the Halston Goods was House of Halston. Moreover, it is undisputed that the goods were manufactured for House of Halston's benefit.

16. This is based on, inter alia: (i) the fact that House of Halston gave all instructions related to the manufacture and delivery of the Halston Goods; (ii) House of Halston and HOC share the same place of business at 1201 West 5th Street, Los Angeles, California from where the purchase orders were issued and where the Halston Good were shipped; (iii) is headed by the same Chief Executive Officer, Ben Malka; (iv) there is an overlap between contacts at House of Halston and HOC with whom Texmont communicated; (v) there is no real distinction evident between House of Halston and HOC; and (vi) upon information and belief they otherwise share the same directors and officers.

17. As set forth in Appendix A annexed hereto (the "Halston Goods"), Texmont is owed payment for the Halston Goods that Texmont manufactured and delivered for House of Halston in accordance with House of Halston's instructions.

**Xcel and The Xcel Goods**

18. In December 2014[2], Xcel Brands, Inc. acquired the brands "H by

---

[2] See Supra.

Halston" and "H Halston."

19. From in or about November 2017 though and including October 2018, Texmont worked directly with Xcel to manufacture "H by Halston" and "H Halston" branded apparels according to Xcel's instructions, specifications, direction, management and control.

20. Texmont received detailed instructions directly from Xcel on everything from design and manufacture specifications, quarterly budget mandates, product material specifications, branding and label attachment requirements, as well as packaging dictates. A copy of a December 20, 2017 email correspondence between Kimberly Nguyen who was Xcel's Product Development Coordinator and Michael Liu of Texmont is attached hereto as **Exhibit A**.

21. Xcel also directed the placement of each "H by Halston" and "H Halston" labels to each item of goods that Texmont manufactured for Xcel.

22. At all times Xcel negotiated directly with Texmont for the price of each item of goods it instructed Texmont to manufacture. Xcel also issued the order pads (which are the initial purchase orders) that listed the quantity and color of each design item Xcel ordered, and gave delivery instructions and dates of each of these orders.

23. Texmont communicated regularly with Xcel, including with, among others, Kimberly Nguyen, Alice Wong, Hana Pak, Joe Falco, and Salvador Trinidad at Xcel. Notably, Salvador Trinidad was Xcel's Senior Vice President of Design, Creative Director for H by Halston and H Halston.

24. Although HOC issued the final purchase orders for the Xcel Goods (hereinafter defined), Texmont believed that it contracted with Xcel for the manufacture and delivery of the Xcel Goods. Moreover, it is undisputed that the Xcel Goods were manufactured for Xcel's benefit.

25. At all times, Texmont believed that it performed its services for Xcel's benefit and had a contractual relationship with Xcel for the manufacture and delivery of the Xcel Goods.

26. This belief is further evidenced by the fact that Xcel's CEO, Robert D'Loren visited Texmont's Hong Kong office on or about November 22, 2017 as part of Xcel and Texmont's contract negotiation process.

27. As set forth in Appendix B annexed hereto (the "Xcel Goods," at times collectively referred to hereafter with Halston Goods as the "Goods"), Texmont is owed payment for the Xcel Goods that Texmont manufactured and delivered for Xcel in accordance with Xcel's instructions.

**Benefit Received by All Defendants**

28. The Halston Goods and the Xcel Goods were all branded with their respective Halston labels and were and are sold globally through online, direct-to-customer, and in free-standing stores; and resold via wholesale, consignment and/or concession through third-party retail outlets and department stores.

29. Upon information and belief, all of the Goods Texmont manufactured contained the Halston, Halston Heritage, H by Halston and H Halston trademarks owned by House of Halston, the H Company and/or Xcel.

30. Texmont did not and does not have the license to independently sell any of the Goods because the Goods are custom-made and branded with the Halston Companies' and/or Xcel's trademarks and other intellectual property rights.

31. Although the Halston Companies and Xcel benefited from the sale of the Halston Goods and the Xcel Goods, respectively, they failed to pay Texmont for the manufacture and delivery of these Goods.

32. Halston Companies are legally responsible to pay Texmont for the Halston Goods.

33. Xcel is legally responsible to pay Texmont for the Xcel Goods.

34. HOC is legally responsible for payment to Texmont for all of the Goods.

35. Texmont duly invoiced HOC for the Goods in accordance with both House of Halston and Xcel's respective instructions, custom and practice.

36. Texmont expected Defendants to pay Texmont the sums due and owing under the invoices but they failed to pay Texmont.

37. Upon information and belief, House of Halston, HOC and Xcel received and accepted all Goods and invoices without objection.

38. Payment for manufacture and delivery of all Goods on the invoices were generally due within 60 days of the invoice date, with the exception of some of the invoices for the Xcel Goods, which were due within 30 days of the invoice date.

39. To date, the total amount unpaid and outstanding for both the Halston Goods and the Xcel Goods total $1,198,077.25, and each are more fully detailed in the annexed Appendices A and B.

40. Texmont is due and owing from all Defendants a total of $1,198,077.25 on account of the Goods, excluding any applicable interest, expenses, fees and costs, all of which are also due, owing and hereby demanded (the "Indebtedness") based on the Counts below, and Texmont has and hereby does demand immediate payment in full of the Indebtedness.

## FIRST COUNT

(*Breach of Contract – As to House of Halston, HOC and Xcel*)

41. Texmont repeats and realleges each and every allegation contained in Paragraphs 1-40 above as if fully set forth herein.

42. All purchase orders for the Goods issued by HOC constitute valid, binding and enforceable agreements.

43. The Halston Goods ordered, manufactured, invoiced and delivered were done so according to specific instructions from House of Halston and HOC, and were done so for Halston Companies' benefit.

44. Texmont has fully performed all of its obligations according to House of Halston's instructions and for the Halston Companies' benefit.

45. Nonetheless, House of Halston and HOC failed to pay Texmont for the Halston Goodsand there is now due and owing to Texmont the unpaid sum of

1 | $313,846.03.

46. Likewise, Xcel issued purchase orders in the form of order pads to Texmont for the manufacture and delivery of the Xcel Goods to Xcel.

47. Xcel also directed the manufacturing and delivery of the Xcel Goods.

48. Texmont has fully performed all of its obligations according to Xcel's direct instructions and for its benefit.

49. Nonetheless, Xcel failed to pay Texmont for the Xcel Goods totaling $884,231.22.

50. Based on the foregoing, Texmont has been damaged in an amount of not less than $1,198,077.25, plus all applicable interest, late charges, costs and expenses, including reasonable attorneys' fees.

## SECOND COUNT

(*Goods Sold and Delivered – As to House of Halston, HOC and Xcel*)

51. Texmont repeats and realleges each and every allegation contained in Paragraphs 1-50 above as if fully set forth herein.

52. Texmont manufactured and delivered the Halston Goods custom-made to House of Halston's instructions and for its benefit at the agreed upon prices and specifications.

53. Texmont has fully performed by manufacturing and delivering the Halston Goods according to these instructions.

54. Nonetheless, House of Halston and HOC failed to pay Texmont for the manufacture and delivery of the Halston Goods.

55. Likewise, Texmont manufactured and delivered the Xcel Goods custom-made to Xcel's instructions and for its benefit at the agreed upon prices and specifications.

56. Texmont has fully performed by manufacturing and delivering the Xcel Goods according to these instructions.

57. Nonetheless, Xcel and HOC failed to pay Texmont for the manufacture and delivery of the Xcel Goods.

58. Based on the foregoing, Texmont has been damaged in, and is due and owing, an amount of not less than $1,198,077.25, plus all applicable interest, late charges, costs and expenses, including reasonable attorneys' fees.

## THIRD COUNT

### (*Account Stated – As to HOC*)

59. Texmont repeats and realleges each and every allegation contained in Paragraphs 1-58 above as if fully set forth herein.

60. Texmont has delivered to HOC various statements of invoices for the Goods that showed a total balance of $1,198,077.25, due and owing to Texmont.

61. HOC received and accepted the invoices as correct without objection, and further confirmed and acknowledged both the fact of the indebtedness and the amount of the indebtedness in various communications with Texmont.

62. Despite due demand, HOC failed to pay Texmont the total outstanding amounts for the Goods as set forth in Appendix A to this Complaint.

63. Based on the foregoing, Texmont has been damaged in, and is due and owing, an amount of not less than $1,198,077.25, plus all applicable interest, late charges, costs and expenses, including reasonable attorneys' fees.

## FOURTH COUNT
### (*Open Book Account – As to HOC*)

64. Texmont repeats and realleges each and every allegation contained in Paragraphs 1-63 above as if fully set forth herein.

65. Since July 2018, HOC has issued purchase orders for the production, manufacture, and delivery of custom-made Halston Goods for which HOC agreed to pay Texmont an agreed upon amount.

66. Texmont has kept an account of the debits and credits involved in the

purchase and sale of the Halston Goods.

67. HOC owes Texmont monies on the account in the amount of not less than $313,846.03.

68. HOC has not paid Texmont the monies due and owing on the account despite due demand.

69. Based on the foregoing, Texmont has been damaged in, and is due and owing, an amount of not less than $313,846.03, plus all applicable interest, late charges, costs and expenses, including reasonable attorneys' fees.

### FIFTH COUNT

(Unjust Enrichment – *As to All Defendants*)

70. Texmont repeats and realleges each and every allegation contained in Paragraphs 1-69 above as if fully set forth herein.

71. At HOC and House of Halston's request and instructions, Texmont manufactured and delivered the Halston Goods to House of Halston.

72. At Xcel's request and instructions, Texmont manufactured and delivered the Xcel Goods to Xcel.

73. Defendants House of Halston, HOC and Xcel have retained said Goods without due payment and have been selling the Goods through their respective websites, retail stores and various resellers, including large department stores.

74. Halston, HOC and Xcel have been collecting monies from these third parties for the Goods produced by Texmont and have been unjustly enriched.

75. H Company and Xcel have been unjustly enriched because the Goods are branded with H Company's and Xcel's respective intellectual property, and both have and continue to benefit from the sale of the Goods.

76. As a result of Texmont's continued performance of its obligation to produce and supply H Company's and Xcel's branded merchandise, H Company's branded products remained in the public sphere and H Company's and Xcel's

10

Case No. 2:18-cv-10164

FIRST AMENDED COMPLAINT

respective intellectual property increased and maintained its value.

77. As a result of Defendants' failure to compensate Texmont and pay for the Goods that Texmont manufactured and delivered to Defendants, Defendants have been unjustly enriched in the amount of at least $1,198,077.25.

78. Based on the foregoing, Texmont has been damaged in, and is due and owing, an amount of not less than $1,198,077.25, plus all applicable interest, late charges, costs and expenses, including reasonable attorneys' fees.

## SIXTH COUNT

### (Promissory Estoppel – *As to House of Halston, HOC and Xcel*)

79. Texmont repeats and realleges each and every allegation contained in Paragraphs 1-78 above as if fully set forth herein.

80. Texmont detrimentally relied on House of Halston, HOC and Xcel's specific promise to pay for the Goods that House of Halston, HOC and Xcel instructed Texmont to manufacture and deliver according to their respective specifications.

81. Although Texmont has fully performed, House of Halston, HOC and Xcel have failed to fulfil their obligations and pay for the Goods.

82. As a result, Texmont has been damaged in, and is due and owing, an amount of not less than $1,198,077.25, plus all applicable interest, late charges, costs and expenses, including reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Texmont prays for relief as follows:

1. For monetary damages against HOC and the H Company in an amount of $1,198,077.25, plus applicable interest;

2. For monetary damages against House of Halston, H Company, and HOC in the amount of at least $313,846.03, plus applicable interest;

3. For monetary damages against Xcel Brands, Inc. in the amount of at least $884,231.22, plus applicable interest;

4. Costs and expenses of suit including reasonable attorneys' fees; and

5. Such other and further relief as this Court deems just and proper.

### **DEMAND FOR JURY**

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Central District L.R. 38-1, Plaintiff respectfully demands a jury trial for all issues triable to a jury in this action, including but not limited to, those issues and claims set forth in the Complaint and any subsequent Complaint.

Dated: February 28, 2019

By: */s/ Anna S. Park*

Anna S. Park (CA SB No. 314902)
CKR LAW LLP
1800 Century Park East, 14th Floor
Los Angeles, CA 90067
Main: (424) 382-1800
Fax: (310) 400-0202
apark@ckrlaw.com

*Attorney for Plaintiff*
*Texmont Design Limited*

*Appendix A*

**Halston Goods:**

| Date | Amount Due | Invoice Number ("TM") |
|---|---|---|
| 8/14/2018 | $380.00 | TM2586 |
| 8/28/2018 | $620.10 | TM2599 |
| 7/27/2018 | $3,918.44 | 2605REV1 |
| 7/27/2018 | $36,721.10 | 2608 |
| 7/26/2018 | $898.13 | 2609REV1 |
| 8/9/2018 | $59,767.48 | 2610REV1 |
| 7/23/2018 | $166.36 | 2613 |
| 8/9/2018 | $13,941.79 | 2614REV1 |
| 7/26/2018 | $100.41 | 2636 |
| 8/9/2018 | $935.36 | 2655 |
| 9/5/2018 | $822.51 | 2656 |
| 9/6/2018 | $35,747.57 | 2675 |
| 8/9/2018 | $1,528.60 | 2671 |
| 8/13/2018 | $20,706.25 | 2676 |
| 9/5/2018 | $1,518.72 | 2684REV1 |
| 8/13/2018 | $1,476.52 | 2686 |
| 8/15/2018 | $272.82 | 2692 |
| 8/15/2018 | $30,841.06 | 2693 |
| 8/15/2018 | $19,058.40 | 2694 |
| 8/20/2018 | $770.10 | 2701 |
| 8/21/2018 | $11,094.08 | 2702 |
| 8/22/2018 | $169.14 | 2705 |
| 8/22/2018 | $48,377.50 | 2706 |
| 8/22/2018 | $2,331.50 | 2707 |
| 8/27/2018 | $10,935.14 | 2716 |
| 8/27/2018 | $9,574.67 | 2717 |
| **Subtotal:** | **$313,846.03** | |

13
Case No. 2:18-cv-10164
FIRST AMENDED COMPLAINT

*Appendix B*

**Xcel Goods:**

| Date | Amount Due | Invoice Number ("TM") |
|---|---|---|
| 7/3/2018 | $12,024.56 | 2557 |
| 7/4/2018 | $163,295.76 | 2558 |
| 8/1/2018 | $142,577.17 | 2624 |
| 7/31/2018 | $11,222.10 | 2625 |
| 8/8/2018 | $39,815.63 | 2634 |
| 8/18/2018 | $1,875.16 | 2669 |
| 8/18/2018 | $10,793.46 | 2670 |
| 8/8/2018 | $2,020.20 | 2680 |
| 8/13/2018 | $19,959.20 | 2688 |
| 8/22/2018 | $9,388.38 | 2708 |
| 8/22/2018 | $89,042.62 | 2709 REV1 |
| 8/28/2018 | $3,218.26 | 2723 |
| 8/30/2018 | $2,339.14 | 2728 |
| 8/30/2018 | $35,378.98 | 2725 |
| 7/31/2018 | $54,001.66 | 2596REV1 |
| 9/3/2018 | $22,862.80 | 2632 |
| 8/30/2018 | $34,254.30 | 2678REV1 |
| 9/4/2018 | $123,946.20 | 2679REV1 |
| 8/21/2018 | $13,230.52 | 2699 |
| 8/20/2018 | $13,142.34 | 2700 |
| 8/24/2018 | $22,883.90 | 2715 |
| 8/24/2018 | $20,870.28 | 2718 |
| 8/30/2018 | $36,088.60 | 2742 |

Subtotal: $884,231.22

**TOTAL DUE FOR ALL GOODS:**     $1,198,077.25

**EXHIBIT A**

---------- Forwarded message ---------
From: **Kimberly Nguyen** <knguyen@xcelbrands.com>
Date: Wed, Dec 20, 2017 at 8:34 AM
Subject: Texmont Design Limited Set Up 12.19
To: Michael Liu <michaelliu@texmonthk.com>
Cc: Lisa Chin <lisa.chin@halston.com>, Alice Wong <awong@xcelbrands.com>, Joe Falco <jfalco@xcelbrands.com>

Hi Michael,

It was very nice to meet with you today. As you are already a vendor with Halston, we will not need your set up forms.

Attached is a chart of the basic requirements from our accounts. The following is a brief recap of the Account Requirements:

1. Vendor Manuals: Please see attached for the vendor manuals for HBC (Lord&Taylor+ Hudson's Bay) / Dillard's
2. Hanger Requirement *Please see attached Packing Instructions excel chart*
3. Main label / Branded Hangtag: Our nominated supplier is Nexgen. Please see excel file regarding costing for details on the article #'s per brand.

    a. Contact: Tony Costa - tony.costa@nexgenpkg.com (NY Office) / Erica Lau - ericalau@nexgenpkg.com (HK Office)
    b. We prefer you to order from Nexgen, but if you have a supplier that will be more cost beneficial, then you may develop your own while maintaining our approved quality.
4. Polybag Requirement: Both accounts require all garments to be in poly bags
5. Price Ticket *Please see attached Packing Instructions excel chart*

    a. LT + HB Requirements: All garments

        i. Price ticket dimensions : 36 x 86 MM

    b. Dillard's Requirements : All garments

1

      i. Price ticket dimensions: 36 x 86 MM

6. UPC Sticker *Please see attached Packing Instructions excel chart*
    a. LT + HB Requirements – ONLY internet orders require UPC sticker

        i. UPC Sticker dimension: 22 x 32 MM

    b. Dillard's Requirements – all garments must have UPC sticker

        i. UPC Sticker dimension: 41 x 65 MM

7. Label placement – see attached for your reference
8. Packing
    a. LT – bulk pack @ factory. Pass to Kesco pick and pack for 51 destinations (51 stores)
    b. HBC – bulk pack @ factory. Pass to Kesco for pick and pack for 90 destinations (90 stores)
    c. Dillards – bulk pack @ factory. Pass to Kesco for pick and pack for 6 destinations (6 DC's)
9. Lab Testing

    a. As discussed in today's meeting, no need for testing unless it is a special case.
10. Sample Request *Please see attached Packing Instructions excel chart*

    a. LT + HB Requirements – Please see attached chart for further details
    b. Dillard's Requirements – Please see attached chart for further details
11. Care label – Quality should be woven.


We can leave you samples of the UPC stickers / Price tickets for easy reference. Please advise where we can send for you.


Thanks,

Kim



**Date:** 11/30/2017
**Master Customer:** Xcel Brands
**Project Name:** H Halston 2017
**Development Stage(s):** Pending
**Season(s):**

nexgen packaging

| Item Code | SRI # | Image | Item Desc | Prod Type | Size | Spec's | Color | Currency | Price | UOM | Status | Min per SKU / Order | Prod Lead Time/Ex Factory Location |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HAL-HT-02 | S225752 | | H Halston Hangtag w/ Bandseal | Printed Combo Tag | Tag1: 91.00 X 48.00 (mm); | 35pt C2S match stock color of (XCE-HAL-HT-01) matte PP lamination Square Corner | Tag1: Back Color: Black; | USD($) | Flat Price: $240.00 | per thousand (M) | Submitted to Client | / 5000 | 3 / Hong Kong (China) |
| HAL-WL-07 | S225830 | | H by Halston Large Endfold Label (needleloom) | Woven Label | Width: 36; Fill/Ground Color (Overall Length): 82; Finished Length: 70; (mm) | Needleloom, Damask, End Fold | Front Color: Black; | USD($) | Flat Price: $114.00 | per thousand (M) | Submitted to Client | / 1000 | 2-3 / Hong Kong (China) |
| HAL-WL-06 | S225829 | | H by Halston Small Endfold Label (needleloom) | Woven Label | Width: 15; Fill/Ground Color (Overall Length): 68; Finished Length: 56; (mm) | Needleloom, Damask, End Fold | Front Color: Black; | USD($) | Flat Price: $55.00 | per thousand (M) | Submitted to Client | / 1000 | 2-3 / Hong Kong (China) |
| HAL-WL-02 | S195228, S196071 | | H Halston End -fold Label | Woven Label | Width: 40; Fill/Ground Color (Overall Length): 82; Finished Length: 70; (mm) | Broadloom, HD Damask, End Fold, Double Shuttle | Front Color: Black, White; | USD($) | Flat Price: $83.00 | per thousand (M) | Approved | / 300 | 2-3 / Hong Kong (China) |
| HAL-WL-03 | S194958 | | H Halston Woven Label | Woven Label | Width: 19; Fill/Ground Color (Overall Length): 79; Finished Length: 67; (mm) | Broadloom, HD Damask, End Fold, Double Shuttle | Front Color: White, Black; | USD($) | Flat Price: $42.00 | per thousand (M) | Approved | / 300 | 2-3 / Hong Kong (China) |
| HAL-HT-01 | S160990, S161034, S164211 | | H Halston hangtag | Printed Tag | 48.00 X 90.00 (mm) | 29pt C2S, Print 1 side, matte PP lamination, Square Corner | Front Color: Black; | USD($) | Flat Price: $263.40 Tiered Price: 5M and up =$174.30; 10M and up =$124.30; 30M and up =$94.20 | per thousand (M) | Approved | / 3000 | 2-3 / Hong Kong (China) |

Page 1 of 1

